**Elaine L. CHAO, Secretary of Labor, United States Department of Labor, Plaintiff–Appellee,**

v.

**VIRGINIA DEPARTMENT OF TRANSPORTATION, Defendant–Appellant.**

**Elaine L. Chao, Secretary of Labor, United States Department of Labor, Plaintiff–Appellee,**

v.

**Virginia Department of Transportation, Defendant–Appellant.**

**Nos. 01–1965, 01–2195.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 25, 2002.

Decided May 23, 2002.

**ARGUED:** Sydney E. Rab, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellant. Ford Friel Newman, United States Department of Labor, Washington, D.C., for Plaintiff–Appellee. **ON BRIEF:** Randolph A. Beales, Attorney General of Virginia, Francis S. Ferguson, Chief Deputy Attorney General, Judith W. Jagdmann, Deputy Attorney General, Guy W. Horsley, Jr., Senior Assistant Attorney General/Chief, Anthony P. Meredith, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Defendant–Appellant. Eugene Scalia, Solicitor of Labor, Steven J. Mandel, Associate Solicitor, Paul L. Frieden, for Appellate Litigation, United States Department of Labor, Washington, D.C., for Plaintiff–Appellee.

Before LUTTIG and GREGORY, Circuit Judges, and HENRY M. HERLONG, JR., United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Judge GREGORY wrote the opinion, in which Judge LUTTIG and Judge HERLONG joined.

## OPINION

GREGORY, Circuit Judge.

Two questions are presented for review in this appeal. First, we must determine

whether Virginia's sovereign immunity bars an action brought by the Secretary of Labor under §§ 16(c) and 17 of the Fair Labor Standards Act (FLSA or the Act), 29 U.S.C. § 201 *et seq.*, against the Virginia Department of Transportation (VDOT). Second, we must determine whether the Secretary of Labor is entitled to equitable tolling of the statute of limitations applicable to certain actions brought by the Secretary under the Act. 29 U.S.C. § 255. For the following reasons, we hold that the VDOT is not immune from suit by the Federal Government for violations of the Act, and that the Secretary's claims that are subject to the statute of limitations are time-barred. Accordingly, we affirm in part and reverse in part.

## I.

The Secretary's suit alleges that the VDOT has violated the over-time wage and record-keeping provisions of the FLSA, 29 U.S.C. §§ 207, 211(c), 215(a)(2), by not paying VDOT inspectors for time traveling between work sites. The Secretary asserts that site-to-site travel must be regarded as work and hence is compensable as over-time under § 7 of the Act, 29 U.S.C. § 207. The VDOT asserts that time spent traveling between sites should be regarded as commuting, and therefore should not be counted in calculating the maximum workweek, 29 U.S.C. § 254. *See also* Hours Worked, 29 C.F.R. pt. 785 (2001). The Secretary seeks permanent and restitutionary injunctive relief in the form of back wages. 29 U.S.C. § 217. The VDOT takes the position that it is immune from suit, and that certain of the Secretary's claims are, in any event, time-barred.

To understand the issues presented by this appeal, a brief review of two prior

lawsuits is necessary. In 1995, several VDOT inspectors filed a private action against the VDOT in the Eastern District of Virginia seeking back wages, based on the same violations at issue here. Three-hundred fifty-two inspectors eventually joined the suit. *Taylor v. Commonwealth of Virginia*, No. 3:95cv1026. On March 27, 1996, while the VDOT inspectors' suit was pending in the district court, the Supreme Court issued its decision in *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), holding that Congress could not abrogate a State's Eleventh Amendment immunity[1] from private suit by the citizens of the State in federal court pursuant to Article I's Commerce Clause, U.S. Const. art. I, § 8. 517 U.S. at 76, 116 S.Ct. 1114. After the decision in *Seminole Tribe*, the VDOT inspectors asked the Secretary of Labor to intervene in the federal suit. Citing limited resources, the Secretary declined to intervene. The Secretary did, however, offer to file an *amicus* brief addressing sovereign immunity if the VDOT inspectors refiled their lawsuit in state court. Letter from Diane A. Heim, Counsel, Office of the Solicitor, Dept. of Labor, to James B. Thorsen, Esq. (June 21, 1996); J.A. 110. The federal lawsuit was dismissed pursuant to *Seminole Tribe*. *Taylor v. Commonwealth of Virginia*, 170 F.R.D. 10 (E.D.Va.1996).

The VDOT inspectors then filed a second lawsuit against the VDOT in the Richmond Circuit Court alleging the same violations of the FLSA. *Griffin v. VDOT*, LB–2505–1 (Va. Cir. Ct. Richmond Oct. 8, 1996). The VDOT moved for dismissal, again arguing the suit was barred by Virginia's sovereign immunity. The Secretary sought to file an *amicus* brief arguing that Virginia was not immune from suit under the FLSA by private individuals in state court. Despite refusing to permit

---

1. We use "Eleventh Amendment immunity" and "sovereign immunity" interchangeably.

the participation of the Secretary as *amicus curiae*, the circuit court judge concluded that the suit was not barred by Virginia's sovereign immunity. For procedural reasons not relevant here, the circuit court judge then ordered that the case be split into groups of VDOT inspectors. The claims of the first group of forty inspectors proceeded to trial in November 1998, and the jury returned a verdict in favor of the VDOT. The claims of the remaining plaintiffs remained in a pre-trial posture. On June 23, 1999, the Supreme Court issued its decision in *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), holding that the Eleventh Amendment bars employees from bringing FLSA enforcement cases against nonconsenting states in state court. Shortly thereafter, the Supreme Court of Virginia held, in an unrelated case, that the Commonwealth had not consented to suit under the FLSA. *Commonwealth v. Luzik,* 259 Va. 198, 208, 524 S.E.2d 871, 878 (2000). The Secretary then sought to intervene in the VDOT inspectors' state case, but her motion was denied. The VDOT renewed its motion to dismiss based on *Alden,* and the motion was granted on May 10, 2000. J.A. 61.

On July 18, 2000, the Secretary filed the instant lawsuit, alleging violations of §§ 7 and 15(a)(2) of the Act, 29 U.S.C. §§ 207, 215(a)(2), and seeking a permanent injunction and back wages on behalf of the inspectors whose claims were not heard in the prior litigation, 29 U.S.C. § 217. The Secretary also alleged that the VDOT violated § 11(c) of the Act, 29 U.S.C. § 211(c), by not keeping adequate records of hours worked by inspectors. The VDOT filed a motion to dismiss for lack of subject matter jurisdiction, again arguing

that Virginia was immune from suit under the Eleventh Amendment. The VDOT also filed a motion for summary judgment, arguing that the Secretary's suit was time-barred. The district court denied both motions, holding that the VDOT was not immune from suit by the Federal Government and that the Secretary was entitled to equitable tolling of her claims seeking back wages. The district court also held that the Secretary's claims asserting record-keeping violations were not subject to the statute of limitations.[2]

The VDOT took an immediate appeal of the order denying sovereign immunity, 29 U.S.C. § 1291; *see Eckert Int'l Inc. v. Sovereign Democratic Republic of Fiji,* 32 F.3d 77, 78 (4th Cir.1994) (holding order denying sovereign immunity is an immediately appealable collateral order); *City of Virginia Beach v. Roanoke River Basin Assoc.,* 776 F.2d 484, 486 n. 2 (4th Cir. 1985), and sought certification for an interlocutory appeal of the order giving the government the benefit of equitable tolling. The district court granted certification pursuant to 28 U.S.C. § 1292(b), and this court granted permission to file the appeal. The appeals were consolidated. The case is stayed in the district court pending resolution of the appeal.

## II.

■ The district court's determination of subject matter jurisdiction is reviewed *de novo. New Horizon of NY, LLC v. Jacobs,* 231 F.3d 143, 150 (4th Cir.2000). We review the district court's ruling on equitable tolling for abuse of

---

**2.** On appeal, the VDOT offers no substantive argument that the statute of limitations does apply to the record-keeping violations. Instead, the VDOT relies on 29 C.F.R. § 516.5, which requires employers to keep certain records for a period of three years. This regulation clearly relates to the VDOT's obligations under the FLSA, not to the timing of the Secretary's suit.

discretion. *Alli–Balogun v. U.S.*, 281 F.3d 362, 367–68 (2d Cir.2002).

## III.

The VDOT's first contention is that the district court erred in ruling that this suit was not barred by Virginia's sovereign immunity. We disagree, and hold that the VDOT is not entitled to sovereign immunity.

Our federal system is premised on the principle that the States possess "a residuary and inviolable sovereignty" that the Constitution preserved. The Federalist No. 39, at 258 (James Madison) (I. Kramnick ed.1987); *see Alden*, 527 U.S. at 714– 15, 119 S.Ct. 2240 (quoting The Federalist No. 39); *Seminole Tribe*, 517 U.S. at 71 n. 15, 116 S.Ct. 1114 ("The Constitution specifically recognizes the States as sovereign entities."); *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) ("[T]he States entered the federal system with their sovereignty intact."). It is now settled doctrine that one of the retained attributes of sovereignty is immunity from suit, without consent, "save where there has been a 'surrender of this immunity in the plan of convention.' The Federalist, No. 81." *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322–23, 54 S.Ct. 745, 78 L.Ed. 1282 (1934); *Blatchford*, 501 U.S. at 781, 111 S.Ct. 2578; *Seminole Tribe*, 517 U.S. at 54, 116 S.Ct. 1114; *Alden*, 527 U.S. at 729, 119 S.Ct. 2240.

It is also settled that, in ratifying the Constitution, the States surrendered their immunity from suit by the Federal Government. *See, e.g., United States v. Texas*, 143 U.S. 621, 644, 12 S.Ct. 488, 36 L.Ed. 285 (1892); *Principality of Monaco*, 292 U.S. at 329, 54 S.Ct. 745 (collecting cases); *United States v. Mississippi*, 380 U.S. 128,

140, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965) (stating that "nothing in the [Eleventh Amendment] or any other provision of the Constitution prevents or has ever been seriously supposed to prevent a State's being sued by the United States."); *Alden*, 527 U.S. at 755–56, 119 S.Ct. 2240; *South Carolina State Ports Authority v. Federal Maritime Comm'n*, 243 F.3d 165, 176 (4th Cir.2001) (stating that sovereign immunity does not bar suit in "cases brought against a state by the United States or other states"); *Bell Atlantic Maryland, Inc. v. MCI Worldcom, Inc.*, 240 F.3d 279, 289 n. 1 (4th Cir.2001) ("A State's sovereign immunity does not preclude suits brought in federal court by the federal government, or by a sister State, because inherent in the plan of the Constitutional Convention was the surrender by the States of immunity as to these suits." (citations omitted)).

■ The VDOT seeks to avoid the result demanded by established precedent by arguing that this suit for back wages is essentially a private suit, which would be subject to the state's sovereign immunity. According to the VDOT, Virginia retains its sovereign immunity if the Federal Government is not the "real party in interest." Appellant's Br. at 21. The VDOT asserts that the circumstances of the Secretary's suit demonstrate that the government is not asserting a "national interest" in this case, but is merely asserting a "private interest" in back wages on behalf of the inspectors. In addition to the nature of the relief sought, the VDOT points to the fact that the Secretary had previously decided that suit by the Federal Government was unwarranted. This proves, the VDOT contends, that the United States is not the real party in interest, but is merely acting on behalf of the VDOT inspectors in order to avoid the prohibition of the Eleventh

Amendment.[3] For this proposition, the VDOT cites *New Hampshire v. Louisiana*, 108 U.S. 76, 2 S.Ct. 176, 27 L.Ed. 656 (1883).

In *New Hampshire*, the Court held that a state retained its sovereign immunity when sued by another state that is only nominally a party-plaintiff. 108 U.S. at 88–91, 2 S.Ct. 176. In *New Hampshire*, a number of New Hampshire and New York citizens owned Louisiana bonds on which Louisiana had defaulted. Because the individual citizens were barred from suing Louisiana by the Eleventh Amendment, New York and New Hampshire passed statutes authorizing citizens to assign their claims to the state, provided the citizens paid all expenses of the litigation. New York and New Hampshire then sought to sue Louisiana as "representatives" of their citizens. The Supreme Court held that this was an impermissible attempt to subvert the Eleventh Amendment. *Id.*

The VDOT's reliance on *New Hampshire* is misplaced. The Court explained why New Hampshire's and New York's participation as named plaintiffs could not defeat Louisiana's sovereign immunity: "[New York] as well as New Hampshire is nothing more nor less than a mere collecting agent of the owners of the bonds and coupons, and while the suits are in the names of the states, *they are under the actual control of individual citizens, and are prosecuted and carried on altogether by and for them.*" *Id.* at 89, 2 S.Ct. 176 (emphasis added). Here, the Secretary's

suit has the political control found lacking in *New Hampshire*. The case is being litigated by lawyers within, and is under the full control of, the Executive Branch. *See South Dakota v. North Carolina*, 192 U.S. 286, 24 S.Ct. 269, 48 L.Ed. 448 (1904) (holding that suit brought by, and controlled by, South Dakota against Louisiana on bonds owned by South Dakota not barred by the Eleventh Amendment); *cf. Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 802, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (Stevens, J., dissenting) (comparing *New Hampshire* and *South Dakota*); *see also United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 49 (4th Cir.1992) (holding qui tam suit under False Claims Act not barred by states' sovereign immunity, relying in part on the extensive power of the government to control the litigation).

The Supreme Court addressed the scope of the States' consent to suit by the Federal Government in *Alden v. Maine*:

> In ratifying the Constitution, the States consented to suits brought by other States or by the Federal Government. A suit which is commenced and prosecuted against a State in the name of the United States by those who are entrusted with the constitutional duty to "take Care that the Laws be faithfully executed," U.S. Const., Art. II, § 3, differs in kind from the suit of an individual: While the Constitution contemplates suits among the members of the federal system as an alternative to extralegal

**3.** As an initial matter, the VDOT fails to acknowledge that the Secretary of Labor is also seeking a prospective injunction. Despite the fact that the VDOT has largely brought itself into compliance with the FLSA, there appear to be some areas of the VDOT's legal obligations for the future that are still in dispute. *Chao v. VDOT*, 157 F.Supp.2d at 690. Surely the Federal Government's interest in Virginia's future compliance with the FLSA is not

a purely private interest, even as the VDOT defines it. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Consequently, even if we were to accept the VDOT's articulation of the limits of the Federal Government's power to sue the States, we would find that this suit is not barred (at least with respect to the request for a prospective injunction) by Virginia's sovereign immunity.

measures, the fear of private suits against nonconsenting States was the central reason given by the Founders who chose to preserve the States' sovereign immunity. *Suits brought by the United States itself require the exercise of political responsibility for each suit prosecuted against a State, a control which is absent from a broad delegation to private persons to sue nonconsenting States.*

*Id.* at 755–56, 119 S.Ct. 2240 (emphasis added). There can be no doubt that the Secretary, having invoked her authority under the FLSA, has taken "political responsibility" for this suit; it is precisely the sort of suit that has always been thought to fall within the Federal Government's exemption from state sovereign immunity. The Court expanded on this principle in the concluding paragraph of the opinion in *Alden:*

> Despite specific statutory authorization, *see* 29 U.S.C. § 216(c), the United States apparently found the [federal] interests insufficient to justify sending even a single attorney to Maine to prosecute this litigation. The difference between a suit by the United States on behalf of the

employees and a suit by the employees implicates a rule that the National Government must itself deem the case of sufficient importance to take action against the State; and history, precedent, and the structure of the Constitution make clear that, under the plan of the convention, the States have consented to suits of the first kind but not of the second.

*Id.* at 759–60, 119 S.Ct. 2240. The presence *vel non* of political responsibility also explains the Supreme Court's expression of doubt, in *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 785, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991), that the Federal Government's exemption from state sovereign immunity can be delegated to private individuals: "The consent, 'inherent in the convention,' to suit by the United States—at the instance and under the control of responsible federal officers—is not consent to suit by anyone whom the United States might select." *Id.* Because the Federal Government has "deem[ed] the case of sufficient importance to take action against the State," *Alden,* 527 U.S. at 760, 119 S.Ct. 2240, Virginia's sovereign immunity is no bar to the Secretary's suit.[4]

---

4. The Secretary's suit, of course, serves another interest not shared by one State's suit against another, such as in *New Hampshire.* Even in a case like this, where the immediate beneficiaries of the Secretary's suit are specific private individuals, the Federal Government has an interest in enforcing federal law, even as against the States. The Federalist No. 80, at 445; *see Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). A State's interest in the conduct of another State is only that of a co-equal sovereign. New Hampshire does not have the general power to declare that Louisiana must pay its debts. The Framers understood that the States' consent to suit by other States was based on, and was limited by, the need to preserve the peace among the States in the Union. The Federalist No. 80, at 446; *Principality of Monaco v. Mississippi,* 292 U.S. 313, 328, 54 S.Ct. 745, 78 L.Ed.

1282 (1934). Such consent was not an acknowledgment that the States were proper objects of other States' sovereignty. The Federal Government's interest, in contrast, is that of a higher sovereign, and source of the supreme law of the land. U.S. Const. art. VI. And those who bring suit in the name of the United States are "entrusted with the constitutional duty to 'take Care that the Laws be faithfully executed,' U.S. Const. Art. II, § 3[.]" *Alden,* 527 U.S. at 729, 119 S.Ct. 2240. The Federal Government's superior position in the constitutional structure thus suggests that the limits of the States' consent to suit by other States do not coincide with the limits of the States' consent to suit by the United States. *See* Jonathon R. Siegel, *The Hidden Source of Congress's Power to Abrogate State Sovereign Immunity,* 73 Tex. L.Rev. 539, 554 (1995); *but see* Evan H. Caminker, *State Immunity Waivers For Suits by the United States,*

## IV.

The VDOT's second argument on appeal is that the district court erred in equitably tolling the statute of limitations. We agree. Under the FLSA, the Secretary of Labor may obtain an injunction which restrains an employer from continuing to withhold unpaid overtime compensation due an employee, "except sums which employees are barred from recovering, at the time of commencement of the action to restrain the violations, by virtue of the provisions of section 255 of this title[.]" 29 U.S.C. § 217. Section 255 provides, upon the finding of willful violations, a three year period of limitation to run from the date of the cause of action accrued. 29 U.S.C. § 255. The parties agree that, under these provisions, the three year period ran, at the latest, on December 31, 1997. The Secretary filed suit on July 18, 2000, over two and one-half years later. The district court held that the Secretary was entitled to equitable tolling because she reasonably relied on the state of the law prior to *Seminole Tribe* and *Alden. Chao v. VDOT*, 157 F.Supp.2d at 704–05.

"[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir.2000); *Spencer v. Sutton*, 239 F.3d 626, 629 (4th Cir.2001). The circumstances under which equitable tolling has been permitted are therefore quite narrow. Equitable tolling has been allowed "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant

has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dept. of Veterans*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). We have also recognized that equitable tolling is appropriate when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Harris*, 209 F.3d at 330 (quoting *Alvarez–Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)). Equitable tolling is not appropriate, however, "where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96, 111 S.Ct. 453.

The Secretary of Labor filed no pleading in this case, defective or otherwise, during the limitations period. Nor did the VDOT contribute in any way to her delay in filing. Consequently, the Secretary is entitled to equitable tolling only if she acted diligently to protect her rights, but was prevented from filing a timely claim due to extraordinary circumstances beyond her control.

The Secretary contends that she has met this standard because the individual employees diligently pursued their private claims, and she acted reasonably in declining to intervene until after *Alden*. She misconstrues the nature of the inquiry. The diligence of the private plaintiffs is of no moment in considering the government's conduct. The question is whether the delinquent *plaintiff* has done everything *she* can to preserve her rights. In this case, it is beyond peradventure that she did not. Moreover, "reasonableness" is not the touchstone of equitable tolling. We do not doubt that the Secretary's deci-

98 Mich. L.Rev. 92, 118–19 (1999) (suggesting limits to the Federal Government's exemption from the States' sovereign immunity in cases where United States does not have a tangible

injury). For this reason as well, the VDOT's reliance on *New Hampshire* or other cases describing suits by entities other than the Federal Government is misplaced.

sion not to initiate litigation was a reasonable exercise of her obligation to allocate resources in the face of uncertain future events. But that kind of reasonableness does not answer the question of whether she should be excused from the natural consequences of the decision. The Secretary specifically declined to join the litigation after *Seminole Tribe*, citing limited resources, even though the plaintiffs had requested that she intervene. J.A. 110. Her decision to wait was obviously based on an evaluation of the costs and benefits of not bringing suit. The law of sovereign immunity was known to be in a state of flux prior to *Alden*. In declining to intervene after *Seminole Tribe*, the Secretary offered to file an *amicus* brief in the inspectors' state court case arguing—the *Alden* issue—that sovereign immunity did not apply except in suits in federal court. J.A. 110. Aware of the risks, the Secretary decided not to file suit. She now seeks to avoid the then-known potential consequences of her actions. Unfortunately for the VDOT inspectors in this case, who must ultimately bear the burden, equitable tolling cannot relieve the Secretary of responsibility for hard choices.

"[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Accordingly, we find that the Secretary is not entitled to equitable tolling of the statute of limitations. The claims subject to the statute of limitations are therefore time-barred.

## V.

The judgment of the district court is affirmed in part, and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*