FRANCIS H. GOSMAN, t/a DAWNROSE DIPPER *v.*
PRINCE GEORGE'S COUNTY, MARYLAND

[No. 657, September Term, 1978.]

*Decided February 9, 1979.*

The cause was argued before THOMPSON, MOORE and MACDANIEL, JJ.

*Phillip R. Zuber,* with whom were *Richard I. Kovelant* and *Goldman, Nichols, Kovelant, Pendersen & Hurtt* on the brief, for appellant.

*Alan E. D'Appolito, Associate County Attorney for Prince George's County,* with whom were *James C. Chapin, County Attorney,* and *Michael O. Connaughton, Deputy County Attorney,* on the brief, for appellee.

MACDANIEL, J., delivered the opinion of the Court.

In 1977 the appellee, Prince George's County, brought a Petition for Injunctive Relief in the Circuit Court for Prince George's County to enforce an order of the Zoning Inspection Division of the Prince George's County Department of Licenses and Permits against the appellant, Francis H. Gosman, t/a Dawnrose Dipper. The order required the appellant to remove a sign allegedly in violation of the Prince George's County zoning ordinance. This appeal is from the circuit court's decision dated June 15, 1978, to enforce that order.

The pertinent provisions of the Prince George's County Code are as follows:

"SEC. 27-101. DEFINITIONS.

(134) *Sign, Outdoor Advertising:* Sign including billboard which directs attention to a business, commodity, service, entertainment, or other activity conducted, sold, or offered elsewhere than on the premises upon which the sign is located . . . ."

"SEC. 27-427. PURPOSE OF DIVISION.

For the purpose of promoting the health, safety, and general welfare; conserving the natural, landscaped, and improved scenery; encouraging and

protecting the appropriate uses of land, buildings, and structures; regulating and restricting unsightly and detrimental signs tending to depreciate the values of property and hindering progressive improvements in the Regional District; and for the purpose of lessening, eliminating, and regulating signs constituting an actual or potential hazard to safe motor vehicle operation and general traffic on the highways . . . ."

"SEC. 27-455. BUSINESS SIGNS, FREE-STANDING.

. . . free-standing business signs are allowable under the following conditions and restrictions:

. . .

(2) In any Commercial Zone other than the C-O Zone and in any Industrial Zone, a free-standing or ground-supported sign identifying an integrated shopping center or integrated industrial center may be erected, subject to the following conditions and requirements:

(a)

| Total Street Frontage on All Streets of Center | Number of Signs Permitted |
|---|---|
| 0 to less than 100 feet | None |
| 100 to 1,100 feet | One |
| Each additional 1,000 feet or fraction thereof | One |

. . .

(C) An individual business, not located in an integrated shopping or industrial center but located in any of the Zones specified in Subsection (2), may erect a free-standing or ground-supported sign, subject to the requirements of Subsection (2) applied on an individual basis; except that the minimum frontage for one (1) sign shall be forty (40) feet; and provided further that the main building on such premises is set back a minimum of forty (40) feet

from the front property line and that the area of such sign shall not exceed one (1) square foot for each four (4) lineal feet of street frontage."

"SEC. 27-459. AMORTIZATION OF NONCONFORMING SIGNS.

. . .

(b) Any sign or other advertising structure or device in existence on the effective date of this Section which: (1) violates or does not conform to the provisions of Division 32 of this Subtitle but (2) was constructed, erected, or maintained in accordance with the requirements of previously existing ordinances, shall be regarded as a nonconforming sign which may be continued for a period to be determined by the table as provided in this Code and if in conformance with other ordinances of the County. Notwithstanding the provisions of Sections 27-101, 27-482 and 27-553 relating to nonconforming uses, and in order to provide for a reasonable standard of amortization and to prevent an unreasonable loss, all nonconforming signs *other than outdoor advertising signs* as defined in Section 27-101 shall be removed in accordance with the table below. The provisions of Sections 27-101, 27-482 and 27-553 shall apply to outdoor advertising signs. Nonconforming signs which are structurally altered (excluding a change in the message or lettering), relocated, or replaced shall comply immediately with all provisions of this Ordinance and shall not be permitted to be amortized.

| *Original Cost of Sign* | *Continuance Period* |
| --- | --- |
| $1 — $300 | 6 months |
| $301 — $1,000 | 1 year |
| $1,001 — $3,000 | 2 years |
| $3,001 — $5,000 | 3 years |
| $5,001 — $10,000 | 4 years |

| Original Cost of Sign | Continuance Period |
|---|---|
| $10,001 — $15,000 | 5 years |
| $15,001 — $20,000 | 6 years |
| Over $20,000 | 7 years" |

(Emphasis added.)

Under Sections 27-482 and 27-553, "outdoor advertising signs" may remain as prior nonconforming uses.

The appellant's property is located on Baltimore Avenue (Route 1) in Beltsville and is zoned C-2 (general commercial, existing), with 256 feet of street frontage. There are two free-standing signs on the property. One is 40 square feet in area and is not in issue in this case. The other sign, which is the subject of this dispute, is 128 square feet in area, and it stands 20 feet high. The top of the sign indicates "Dawnrose Dipper" and the bottom of the sign states "LIQUOR BEER ON-OFF." The major portion of the sign prominently advertises the Maryland State Lottery. The sign has been on the property since 1941.

In the court below, the appellant conceded that the sign in dispute does not conform to the present zoning requirements. He feels, however, that the lower court erred in ordering that the sign be removed.

## I

The appellant argues, first, that the sign in question is an "outdoor advertising sign" as defined in the County Code and, hence, that it is not subject to amortized removal. We disagree and completely concur with the following analysis of the lower court judge:

"Defendant contends that his billboard is an 'outdoor advertising sign' as defined in the ordinance because the billboard advertises the Maryland Lottery Numbers Game, which is sold and offered elsewhere than on the premises. While the fact is certainly true, we do not agree with defendant's view. The definition of 'outdoor advertising sign', reads [sic] as a whole, does not mean that any part

of the sign that refers to a business, commodity, service, etc. offered elsewhere than on the premises will bring that sign within the scope of the definition. Rather, the definition, read as a whole, is clearly to be interpreted as referring to the general character of the entire sign, not merely any one of its component parts. The corollary to exempting 'outdoor advertising signs' from the operation of Sec. 27-459(b) is obviously to disallow signs or billboards advertising a business, commodity, service, etc. conducted, sold or offered *on* the premises upon which the sign is located. The clear intention of the billboard in question is not to send people elsewhere to play the Maryland Lottery, but instead, to draw people into the establishment being advertised, i.e. Dawnrose Dipper. Note further the other wording upon the sign, i.e. 'Dawnrose' and 'Liquor-Beer, On-Off'. It is quite clear, therefore, that viewing the billboard in its totality, it is not an 'outdoor advertising sign' within the meaning of the ordinance, but a sign intended to attract people in the establishment on which location it is situated. Thus, the billboard is not exempted from the operation of Sec. 27-459(b), and it must comply with its requirements."

## II

The appellant argues, next, that the difference of treatment in Section 27-459 between nonconforming signs advertising the business on the premises and nonconforming "outdoor advertising signs"[1] is arbitrary and capricious and is a violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.[2] We disagree.

---

1. Outdoor advertising signs may remain as prior nonconforming uses while signs advertising the business on the premises must be made to conform to the zoning requirements of Sec. 27-455 within the period indicated in the amortization table in Sec. 27-459.

2. U. S. CONST. Amend. XIV, § 1 provides in part:
   " ... nor shall any State ... deny to any person within its jurisdiction the equal protection of the laws."

For a zoning ordinance to be upheld, it must be a valid exercise of the "police power." In *Stevens v. City of Salisbury,* 240 Md. 556, 564, 214 A. 2d 775, 779 (1965), the Court of Appeals said:

"For present purposes, the following observations with reference to the police power will suffice. Such power is broad in scope; it is an inherent attribute and prerogative of sovereignty, and has been described as essentially 'no more than the power to govern.' *Allied Amer. Co. v. Comm'r,* 219 Md. 607. It has long been recognized in this State, as established by a long line of decisions of this Court, that the Legislature has an inherent right to prescribe, within constitutional limitations, reasonable regulations, which are necessary to protect the public health, comfort, order, safety, convenience, morals and general welfare. And this right may be delegated to the municipalities of the State."

In *City of Baltimore v. Mano Swartz,* 268 Md. 79, 86, 299 A. 2d 828, 832 (1973), the Court held that a zoning ordinance may not have "as its sole purpose the achievement of an aesthetically pleasing result." However,

" ... aesthetic goals may legitimately serve as an additional legislative purpose, if health, morals or safety or other ends generally associated with the concept of public welfare are being served .... " (Citations omitted.) 268 Md. at 87, 299 A. 2d at 832.

Legitimate zoning ordinance objectives include:

" ... the elimination of signs or pennants which distracted motorists, *Kenyon Peck, Inc. v. Kennedy,* 210 Va. 60, 168 S.E.2d 117 (1969) or the promotion of highway safety, *Stevens v. City of Salisbury,* 240 Md. 556, 567-68, 214 A. 2d 775 (1965); *see E. B. Elliott Adv. Co. v. Metropolitan Dade County,* 425 F. 2d 1141 (5th Cir. 1970), *petition for cert. dismissed,* 400 U. S. 805, 27 L.Ed.2d 35, 91 S. Ct. 12; *Village of*

*Larchmont v. Sutton,* 30 Misc. 2d 245, 217 N.Y.S.2d 929 (1961); *approved and followed in, Village of Larchmont v. Levine,* 225 N.Y.S.2d 452 (1961)." 268 Md. at 87, 299 A. 2d at 832-33.

As the appellant concedes, numerous Maryland cases have made it clear that signs may be separately classified as "outdoor advertising signs," on the one hand, and, on the other hand, signs advertising the business on the premises. *See Donnelly Adv. Corp. v. City of Balto.,* 279 Md. 660, 370 A. 2d 1127 (1977); *Grant v. City of Baltimore,* 212 Md. 301, 129 A. 2d 363 (1957). *See also Railway Express Agency v. New York,* 336 U. S. 106, 69 S. Ct. 463, 93 L. Ed. 533 (1949); 2 Anderson, *American Law of Zoning,* § 15.83 at 764-65 (1976). In addition, the cases have held that:

> "Because neither fundamental rights nor suspect classifications are involved, only a rational relationship [of the classification] to a permissible state objective need be shown. *New Orleans v. Dukes,* 427 U. S. 297, 96 S. Ct. 2513, 49 L.Ed.2d 511 (1976); *Massachusetts Bd. of Retirement v. Murgia,* 427 U. S. 307, 96 S. Ct. 2562, 49 L.Ed.2d 520 (1976); *Governor of the State of Maryland v. Exxon Corp.,* 279 Md. 410, 372 A. 2d 237 (1977)." *Donnelly Adv. Corp., supra,* at 669 [1132-33].

The appellant argues, however, that there is no rational relationship between the separate classifications in this case and a permissible objective under the "police power." We disagree.

We find, first, that there is a permissible objective for the regulation of free-standing signs which is, as suggested in the "preamble," Sec. 27-427, the elimination of distractions to motorists and the promotion of highway safety.

We hold, further, that the requirement of a rational relation between the separate classification of signs and the above objective has been satisfied. We feel that the Prince George's County Council may well have concluded that the "outdoor advertising signs" do not present the same traffic and other problems as on-premises signs. We adopt the language of

*Railway Express Agency v. New York,* 336 U. S. at 110, 69 S. Ct. at 465-66, 93 L. Ed. at 539,[3] which is dispositive of this case:

> "We cannot say that that judgment is not an allowable one. Yet if it is, the classification has relation to the purpose for which it is made and does not contain the kind of discrimination against which the Equal Protection Clause affords protection. It is by such practical considerations based on experience rather than by theoretical inconsistencies that the question of equal protection is to be answered. Patsone v. Pennsylvania, 232 US 138, 144, 58 L ed 539, 543, 34 S Ct 281; Marcus Brown Holding Co. v. Feldman, 256 US 170, 198, 199, 65 L ed 877, 888, 41 S Ct 465; Metropolitan Casualty Ins. Co. v. Brownell, 294 US 580, 585, 586, 79 L ed 1070, 1073, 55 S Ct 538."

While it is possible that "outdoor advertising signs" also present highway safety problems, legislated remedies are not required to be all-embracing:

> "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." 336 U. S. at 110, 69 S. Ct. at 466, 93 L. Ed. at 539.

In *Central Lumber Co. v. South Dakota,* 226 U. S. 157, 160, 33 S. Ct. 66, 57 L. Ed. 164, 169 (1912), the Supreme Court said that a legislative body

> " . . . may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed. Lindsley v. Natural Carbonic Gas Co., 220 US 61, 81, 55 L ed 369, 378, 31 Sup Ct Rep 337, Ann Cas 1912C, 160; Missouri P. R. Co. v. Mackey, 127 US 205, 32 L ed 107, 8 S Ct Rep 1161."

---

3. This case was cited with approval in Donnelly Adv. Corp. v. City of Balto., *supra,* at 669.

In conclusion, the appellant has conceded that the separate classification of "outdoor advertising signs," on the one hand, and, on the other hand, on-premises advertising signs is not, per se, a violation of the Equal Protection Clause of the Fourteenth Amendment. As the case law indicates, a legislative body may validly regulate a class of signs causing a particular problem without regulating all other classes of signs which may also cause problems. Such legislation enjoys a presumption of validity, *City of Balto. v. Charles Center Parking,* 259 Md. 595, 598, 271 A. 2d 144, 145 (1970), and cases cited therein. The appellant, to prevail against this presumption, must have produced evidence that the legislative distinction had no valid basis in fact. Because the appellant failed to produce any such evidence, we hold that the circuit court acted properly in enforcing the administrative order requiring the appellant to remove the offending advertising sign.

> *Judgment affirmed.*
> *Costs to be paid by appellant.*